The Honorable Michelle L. Peterson

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>CHRISTOPHER DEAN HANSON,<br><br>Defendant. | CASE NO.  MJ24-124<br><br>**COMPLAINT**<br><br>Title 21, United States Code,<br>Section 841(a)(1);<br>Title 18, United States Code,<br>Section 922(g)(3) |

BEFORE Michelle L. Peterson, United States Magistrate Judge, United States Courthouse, Seattle, Washington. The undersigned complainant being duly sworn states:

## COUNT 1

### Possession of Fentanyl with Intent to Distribute

On or about May 21, 2020, in Snohomish County, within the Western District of Washington, and elsewhere, CHRISTOPHER DEAN HANSON knowingly and intentionally possessed with intent to distribute substances controlled under Title 21, United States Code, Section 812, to wit: narcotics pills containing a mixture of substances, including fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide).

All in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C).

COMPLAINT / *U.S. v. Christopher Hanson* - 1
USAO No. 2023R00199

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## COUNT 2

### Unlawful Possession of a Firearm

On or about May 21, 2020, in Snohomish County, within the Western District of Washington, and elsewhere, CHRISTOPHER DEAN HANSON, knowing he had previously been convicted of the following crimes punishable by a term of imprisonment exceeding one year:

      i.    *Forgery*, Snohomish County Superior Court cause number 01-1-00953-7, on January 30, 2002;

      ii.    *Possession of Stolen Property in the Second Degree*, Snohomish County Superior Court cause number 93-1-00526-6, on or about January 4, 1994; and

      iii.    *Theft in the Second Degree*, Snohomish County Superior Court cause number 93-1-00526-6, on or about January 4, 1994;

did knowingly possess, in and affecting interstate and foreign commerce, a firearm, that is: a Spike's AR-15-style tactical rifle, that had been shipped and transported in interstate and foreign commerce.

All in violation of Title 21, United States Code, Section 922(g)(1).

And the complainant states that this Complaint is based on the following information:

I, Kelli Johnson, having been duly sworn on oath, depose and say:

### AFFIANT BACKGROUND

1.    I have been employed as a Special Agent of the FBI since 2012 and am currently assigned to the Seattle Field Office. As an FBI agent, I am authorized to investigate violations of federal law and execute warrants issued under the authority of the United States. I have received training and possess experience relating to federal criminal procedures and federal statutes. Moreover, I am a federal law enforcement

COMPLAINT / *U.S. v. Christopher Hanson* - 2
USAO No. 2023R00199

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

officer who is engaged in enforcing criminal laws and am authorized by the Attorney
General to request search warrants, court orders, and other legal processes.

2.      During my employment as a Special Agent for the FBI, I have investigated
federal criminal violations related to drug crimes, violent gangs, cybercrime, child sexual
abuse material, and the sexual exploitation of minors, as well as drug-related homicides,
bank robberies, and special jurisdiction matters. Additionally, I have received specialized
training in violent criminal matters and child exploitation. In 2021, I received
certification as a Digital Evidence Technician (DExT) under the FBI's Computer
Analysis and Recovery Team (CART). In this capacity, I am authorized to conduct
forensic extractions of various digital devices, such as cellular telephones, desktop and
laptop computers, tablets, etc. As a result of my training and experience as a DExT
computer technician, I learned, among other things, about the usage and storage
capabilities of various digital devices and how those devices can be reviewed with
forensic tools. I am currently assigned to a FBI squad responsible for investigating
violent gangs, violent crime and special jurisdiction matters.

3.      I have drafted search warrants and sought other legal process to obtain
information from providers of a variety of electronic services, including cellular
telephone service providers and digital communications providers such as messaging and
email service providers. I have written affidavits in support of court-authorized federal
warrants, pen register/trap and trace orders, and search warrants. I have experience with
investigations involving the use of Title III wiretaps to intercept the communications of
target subjects. I have testified in grand jury proceedings, written investigative reports,
and conducted and participated in numerous subject, victim and witness interviews
involving several types of federal violations related to violent crime, drug trafficking, and
child exploitation. Additionally, I have investigated the methods offenders utilized to
commit these federal violations; often these methods involved communications and other
technological means.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

4.       The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant, and therefore does not set forth all of my knowledge about this matter.

### SUMMARY OF PROBABLE CAUSE

**HANSON's Background**

5.       Between September 1992 and May 2020, HANSON has been arrested 45 times by at least eleven different law enforcement agencies for offenses including *Homicide*, *Possession of a Firearm*, *Manufacture/Delivery of Narcotics*, *Possession of a Controlled Substance*, *Assault*, *Harassment/Threat to Kill*, *Intimidating a Public Servant*, *Obstruction of Law Enforcement*, *Theft*, *Attempt to Elude*, *Possession of Stolen Property*, *Driving Under the Influence*, and *Driving with License Suspended or Revoked*. He has felony convictions for *Forgery*, *Burglary 2*, *Theft 2*, *Possession of Stolen Property 2*. He has been convicted of fifteen gross misdemeanors, to include *Theft*, *Reckless Endangerment*, *Negligent Driving*, *Driving with a Suspended License*, and *Making False or Misleading Statement to a Public Servant*. HANSON has also been convicted of eight misdemeanors, including *Possession of Drug Paraphernalia* and *Driving While License is Suspended or Revoked*.

6.       Of note here, HANSON has the following felony convictions, each punishable by a term of imprisonment of more than one year according to Washington law:

    i.       *Forgery*, Snohomish County Superior Court cause number 01-1-00953-7, on January 30, 2002;

    ii.      *Possession of Stolen Property in the Second Degree*, Snohomish County Superior Court cause number 93-1-00526-6, on or about January 4, 1994; and

COMPLAINT / *U.S. v. Christopher Hanson* - 4
USAO No. 2023R00199

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

iii.    *Theft in the Second Degree*, Snohomish County Superior Court cause number 93-1-00526-6, on or about January 4, 1994.

7.    I have reviewed some of the documentation pertaining to HANSON's *Forgery* conviction. In a written "Statement of Defendant on Plea of Guilty," which was signed by HANSON on November 1, 2001, he was advised that the maximum sentence for the offense was five years in custody and/or $10,000. Additionally, the document informed him that, by entering the plea of guilty, he would not be able to possess, own, or have under his control any firearm, unless his right to do so was restored by a court of record. Additionally, the Judgment and Sentence, entered on January 30, 2002, reflects that the defendant was present for sentencing, and bears his signature and apparent fingerprints. The Judgment also reflects that the maximum sentence is five years in custody, and orders that HANSON not own, use, or possess any firearm until his right to do so is restored by a court of record. I reviewed HANSON's Washington State Criminal History Record and saw no evidence that his right to possess a firearm had been restored.

**Background Regarding Controlled Substances Homicide Investigation**

8.    On August 8, 2018, King County Sheriff's Office (KCSO) initiated a death investigation at a residence in Sammamish, Washington (KCSO case number is C18035076). The home was owned by Nancy Franklin. On October 6, 2018, the King County Medical Examiner's Office completed its report and determined the decedent, Chris Glen Henderson, died of a fentanyl drug overdose. At the time, Henderson lived with Franklin, his mother.

9.    In proximity to Henderson's body, a small bag containing six blue pills was found. The pills were stamped with "M30," a marking consistent with a pharmaceutical preparation of oxycodone, but now more commonly associated with black market pills containing fentanyl. Also in proximity of the decedent was a $20 bill folded lengthwise adjacent to blue and white colored powder, consistent with a pill being ground up and snorted.

COMPLAINT / *U.S. v. Christopher Hanson* - 5
USAO No. 2023R00199

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

10.    Nancy Franklin, Henderson's mother, found the decedent. Franklin reported to law enforcement that on August 7, 2018, at approximately 11:00 p.m., "Chris" and "Crystal" visited Henderson at the residence. Franklin knew that "Chris" supplied Henderson with Oxycodone.

11.    On August 9, 2018, KCSO personnel obtained and executed a search warrant on Henderson's cell phone. In the forensic extraction of the phone, investigators located a text message conversation between Henderson and a contact labeled "Chris" in Henderson's phone. The conversation began at approximately 6:19 p.m. on August 7, 2018 (the day before Henderson was found deceased), and ended at approximately 9:27 p.m. on August 7, 2018. The telephone number associated with "Chris" was (425) 387-6218.

12.    In a Everett Police Department report detailing a traffic accident that occurred on December 31, 2014, CHRISTOPHER D. HANSON provided telephone number (425) 387-6218 to investigating officers. Additionally in 2005, HANSON was arrested three different times by Everett Police Department and provided the aforementioned telephone number to law enforcement personnel on each of those three occasions. Thus, investigators believe "Chris" is CHRISTOPHER DEAN HANSON.

13.    Based on the text communication records between HANSON and Henderson, the two men made arrangements to meet at Henderson's house on August 7, 2018. At approximately 7:00 p.m. that evening, Henderson contacted HANSON and said, "Seeing if you might want to take drive trying to make few bucks off guy at work." HANSON promptly responded, "Depends.Maybe." The conversation continued with Henderson stating, "10 good." HANSON responded, "To where?" and "If its worth my time." Henderson told HANSON "OK well how about 8 and 100 for time." HANSON agreed and said, "Thats good." Henderson then responded, "100 for two hours of driving is pretty good plus your profit on them." HANSON then said, "Not driving to samamash" and "I made 20k last month." Henderson responded "Ok that's cool" and "Worth a shot." HANSON then said, "Sorry i didn't get that u wanted to give me a hundy for driving"

COMPLAINT / *U.S. v. Christopher Hanson* - 6
USAO No. 2023R00199

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and "Let me call u shortly." Based on my training and experience, I believe that Henderson contacted HANSON looking for drugs. It appears that HANSON and Henderson already had a dealer-user relationship, as neither of them specified the particular drug or the price. HANSON inquired about where Henderson wanted to meet so he could evaluate whether it was worth the trip. Henderson indicated he wanted eight pills and would compensate HANSON $100 for driving to meet him. At first HANSON didn't understand that Henderson would pay him $100 just to drive to Sammamish, but once he understood that, said he would call Henderson.

14.    At approximately 7:23 p.m., HANSON called Henderson; the call lasted approximately 8 minutes and 17 seconds. HANSON called Henderson again at 8:35 p.m.; that call lasted approximately 2 minutes and 20 seconds. At approximately 8:38 p.m., Henderson sent HANSON his home address of 19441 SE 21st St. Sammamish, Washington 98075. At approximately 9:27 p.m., HANSON sent Henderson a text message that said, "Im in monroe headed that way. A good 30 min away.." Based on the witness statement of Nancy Franklin, she observed "Chris" and "Crystal" visiting Henderson at the house at approximately 11:00 p.m.

15.    Further investigation revealed that "Crystal" was Crystal Dawn Donovan. When law enforcement personnel recovered Henderson's phone on August 8, 2018, there was a Facebook message between Henderson and Donovan. Henderson told Donovan that he "paid for 8...got 7." In the text message conversation between HANSON and Henderson, Henderson had sought to buy eight pills from HANSON.

16.    Six blue pills were found in proximity to the decedent. During a subsequent interview of Donovan, she admitted that she and HANSON drove to Henderson's house and delivered seven pills to Henderson. Donovan admitted that they were supposed to deliver eight pills, but she stole one of the pills during the drive to Henderson's house and ingested it. Since Henderson received seven pills and took one pill (which ultimately caused his death), the remaining six pills found in proximity to his body corroborates

COMPLAINT / *U.S. v. Christopher Hanson* - 7
USAO No. 2023R00199

Henderson's Facebook message to Donovan that he paid for eight pills and was only supplied with seven.

### Arrest of HANSON, Seizure of Fentanyl and Firearms

17.    On May 21, 2020, KCSO personnel located HANSON parking his vehicle in the vicinity of 27th Avenue NE and 236th Street NE in Arlington, Washington; they arrested him for *Controlled Substances Homicide* based on their investigation of the death of Henderson. Donovan was a passenger in the vehicle at the time of his arrest. At the time of his arrest, HANSON possessed a container of 17 blue pills stamped "M 30" on his person. Investigators searched HANSON's vehicle and located $5,500 in the trunk. HANSON was charged with *Controlled Substances Homicide*. That case remains pending in King County Superior Court.

18.    Law enforcement personnel advised HANSON of his *Miranda* rights, which he waived. HANSON admitted to selling pills similar to those found on his person to individuals as recently as within the month of his arrest. HANSON also admitted to selling fentanyl pills. In addition to buying and selling narcotics, HANSON said he uses opioids. HANSON consumes the pills by swallowing them.

19.    During the interview, HANSON admitted to giving Henderson pills the night he had seen him, which was night prior to Henderson's death. HANSON said Henderson paid him $100 to drive to his house in Issaquah and deliver the pills.

20.    Later that day, investigators took HANSON to his home in Granite Falls, Washington, where HANSON consented to a search of his room. During the search, law enforcement personnel found a safe that sat atop a wooden dresser located in HANSON's closet. The dresser was padlocked. Law enforcement personnel received HANSON's consent to search inside the locked containers and used keys that were found on HANSON's person at the time of his arrest to access the safe and unlock the padlock. The dresser contained marijuana in plastic bags that were stored inside plastic containers. In one of the plastic containers, a cloth Crown Royal bag contained 150 pills that appeared to be Xanax, also known by its generic name alprazolam, a controlled drug.

COMPLAINT / *U.S. v. Christopher Hanson* - 8
USAO No. 2023R00199

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

21.    Inside the locked safe there were three locked metal boxes. Law enforcement used a key found on HANSON's person at the time of his arrest to unlock the metal boxes. Inside one of the locked metal boxes was rubber-banded cash that totaled $30,005. In another locked metal box there were 842 pills stamped "M 30." Samples of the pills were tested by a forensic scientist at the Washington State Patrol Crime Laboratory, who determined that the pills contained fentanyl and acetaminophen.

22.    Under the bed, investigators located a 12-gauge Mossberg shotgun and a Spike's AR-15-style tactical rifle. HANSON said he had forgotten that the firearms were there. During his interview, HANSON admitted to shooting firearms, including shotguns and handguns, within the previous year. Investigators also located a full case of 100 12-gauge shotgun shells as well as miscellaneous 5.56 rounds of ammunition elsewhere in HANSON's room.

### Search of HANSON's Cell Phone

23.    During HANSON's arrest on May 21, 2020, KCSO personnel seized his cell phone. On February 17, 2023, I obtained federal search warrant MJ23-071 issued by the Western District of Washington authorizing a search of this phone.

24.    Based on a search of the phone, there appeared to be several text messages wherein HANSON was being asked to supply drugs. Notably, there were text messages between HANSON and others regarding likely drug sales that occurred the day of or the day before HANSON's arrest on May 21, 2020.

25.    For example, on May 21, 2020, between approximately 4:41 a.m. (UTC) and 5:39 a.m. (UTC), there was a thread of text messages between HANSON and a telephone number associated with the contact name "Nikki." HANSON told "Nikki," "If u need anything tonight ill b at the Wind casino all night but do have." "Nikki" responded, "well last night i only got 2 of the old ones and 9 of the new so if its gonna be like that i just cant." HANSON responded, "I was asleep, i worked the last 3 days. I didnt get to put package together." "Nikki" stated, "well if you can do me a solid tonight ill buy 17." HANSON responded, "Dont really matter to me because i have 5 thousand new

bomb ones come in tomorrow and will have better than everyone else like always anyhow. Always got a mix for about a week." HANSON also texted, "I can meet u by the gas station in casino parking lot if u decide to come up here at 18 each. I do know everones prices are going up also except for me," and "I know because all the big shitty dealers all have crap compared to me." HANSON then stated, "So halla if serious about coming up. Got a room. Just no visitors." "Nikki" responded, "can i look at them before i buy them." HANSON replied, "I aint got time for that bullshit, look at em all u want," and "Just dont waste my time, go somewhere else and pay more for crap. Dont care. Like i said, when serious lmk." "Nikki" responded, "im not trying to be a punk bout it but i cant afford to not get good 1s tonight." HANSON stated, "Everything is good, im dumping 1-200 a day, np on any of them."

26.    On May 21, 2020, between approximately 5:44 a.m. (UTC) and 7:12 a.m. (UTC), there was another thread of text messages between HANSON and "Nikki." HANSON sent "Nikki" a text message that stated, "If u come out ill hook u up at 17each. Ok, homie hookup." "Nikki" responded, "i need 20." HANSON said, "Ok, and i made that up for u last night actually, 6 old and 5 of newer. I have 4 different kinds all mixed. LMK when u get here and i have to b discreet and come to your car, so stay in car by the as pumps. U will have to wait in a line and just tell them u are picking someone up or u got a room." "Nikki" said, "ok. the ones are hard as hell and greener are the ones im after were you able to make a package up of those or are they going to be mixed im just trying to get an idea." HANSON responded, "I told u 4 different kinds, im at a slot machine. U will get like 50 50 or 60 -40. 4 different kinds." In another text to "Nikki," HANSON said, "Im even going to throw one or 2 extras actually just because i can. Business is really fucking good." Thereafter, HANSON texted, "So can u find my hard ones anywhere else? No u cant, because thats my main best hook up and thats why i have the best around almost always. But once in awhile i buy a thousand or 2 of something else just to see if i can get better and so far it hasnt happened. So i stick with my main source." After some discussion regarding what appears to be logistics for meeting,

COMPLAINT / *U.S. v. Christopher Hanson* - 10
USAO No. 2023R00199

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

HANSON sent "Nikki" a text that stated, "Ok halla. 340 for 22 is a good package." "Nikki" sent a text shortly thereafter that said, "here." HANSON responded, "Ok." "Nikki" stated, "at the gas station thats where they told me 2 park." HANSON sent two texts thereafter that stated, "Coming out" and "I will hook u up with 80-90 % harder ones though all weekend."

27.    On May 22, 2020, between approximately 2:03 a.m. (UTC), HANSON received a text message from a telephone number associated with the contact name "Becka." "Becka" stated, "Hey bud how's it going? Hope all is well. So I have someone asking for a 8B of clear. She can't find any anywhere. And she has been using that as a dayly for over 20 years. If you can how much are thet. Thanks bud."

28.    Based on my training and experience, I believe that these text message conversations involved drug users contacting HANSON to be resupplied with drugs. Specifically, he agreed to sell 22 pills to "Nikki" for $340 and arranged to meet her at a hotel room. They also had a discussion about the quality of HANSON's pills. HANSON said he was selling 100-200 pills a day and expected to be re-supplied with another 5,000 pills the next day. "Becka" was looking for methamphetamine for a friend.

**Opinion Regarding Drug Trafficking**

29.    Based on my training and experience, I know that 842 fentanyl pills is far in excess of any amount required for personal use. That quantity of pills, combined with HANSON's delivery of fentanyl pills to Henderson is 2018 and the text messages on his cell phone seized on May 21, 2020, indicates to me that HANSON possessed the fentanyl pills found in his room for purposes of distribution.

**Firearm Nexus**

30.    ATF Special Agent Brian Arnold, a recognized expert in the manufacture and identification of firearms and ammunition, has reviewed photos of the Spike's AR-15-style tactical rifle found in HANSON's room. According to Special Agent Arnold, the firearm meets the federal definition of a firearm and was not manufactured in the State of

COMPLAINT / *U.S. v. Christopher Hanson* - 11
USAO No. 2023R00199

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Washington. Thus, it must have been shipped or transported across state lines before being found in HANSON's bedroom on May 21, 2020.

## CONCLUSION

31.    Based on the above facts, I respectfully submit that there is probable cause to believe that CHRISTOPHER DEAN HANSON did knowingly and intentionally commit the offenses of *Possession of Fentanyl with Intent to Distribute*, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C), and *Unlawful Possession of a Firearm*, in violation of Title 18, United States Code, Section 922(g)(1).

KELLI JOHNSON, Complainant
Special Agent, Federal Bureau of Investigation

Based on the Complaint and Affidavit, to which the above-named agent provided a sworn statement by telephone attesting to the truth of the contents of such, the Court hereby finds that there is probable cause to believe the defendant committed the offenses set forth in the Complaint.

Dated this 28th of February, 2024.

The Honorable Michelle L. Peterson
United States Magistrate Judge

COMPLAINT / *U.S. v. Christopher Hanson* - 12
USAO No. 2023R00199

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970